**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **MEETRIX IP, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Case No. 1:18-cv-00309** |
| **v.** | § | |
| | § | |
| **CISCO SYSTEMS, INC.,** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendant.** | § | |
| | § | |

## SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Meetrix IP, LLC ("Meetrix" or "Plaintiff"), by and through its attorneys, for its Second Amended Complaint against Cisco Systems, Inc. ("Cisco" or "Defendant"), hereby alleges as follows:

### I.     NATURE OF THE ACTION

1.     This is a patent infringement action to end Defendant's unauthorized and infringing manufacture, use, sale, offering for sale, and/or importation of methods and products incorporating Plaintiff's patented inventions.

2.     Meetrix is owner of all right, title, and interest in and to United States Patent No. 9,253,332 (the "'332 Patent"), issued February 2, 2016, for "Voice Conference Call Using PSTN and Internet Networks."

3.     Meetrix is owner of all right, title, and interest in and to United States Patent No. 9,094,525 (the "'525 Patent"), issued July 28, 2015, for "Audio-Video Multi-Participant Conference Systems Using PSTN and Internet Networks."

4.     Meetrix is owner of all right, title, and interest in and to United States Patent No.

8,339,997 (the "'997 Patent"), issued December 25, 2012, for "Media Based-Collaboration Using Mixed-Mode PSTN and Internet Networks."

5.      Meetrix is owner of all right, title, and interest in and to United States Patent No. 9,843,612 (the "'612 Patent"), issued December 12, 2017, for "Voice Conference Call Using PSTN and Internet Networks."

6.      Defendant manufactures, provides, sells, offers for sale, imports, and/or distributes infringing products and services; and/or induces others to make and use its products and services in an infringing manner, including its customers, who directly infringe the '332 Patent, the '525 Patent and the '997 Patent ("Patents-in-Suit").

7.      Plaintiff Meetrix seeks monetary damages and prejudgment interest for Defendant's past infringement of the Patents-in-Suit.

## II.      THE PARTIES

8.      Plaintiff Meetrix IP, LLC is company organized and existing under the laws of the State of Texas.

9.      Upon information and belief, Cisco Systems, Inc. is a California corporation authorized to do business in the State of Texas.  Cisco may be served through its agent for service of process Prentice Hall Corporation System at 211 E. 7th Street, Ste. 620, Austin, Texas, 78701-3218.  Cisco transacts business within the State of Texas and this District.

## III.      JURISDICTION AND VENUE

10.      This is an action for patent infringement which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§271, 281, 283, 284, and 285.  This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§1331 and 1338(a).

11.      This Court has personal jurisdiction over Defendant because it has committed acts

giving rise to this action within Texas and within this judicial district. The Court's exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice because Defendant has established minimum contacts with the forum.  For example, Defendant has committed acts of infringement in this District, by among others things, offering to sell and selling products and services that infringe the asserted patents, including the accused devices as alleged herein.

12.     Venue in the Western District of Texas is proper pursuant to 28 U.S.C. §§ 139l (b), (c) and l400(b) because Defendant has an established place of business in this District, including at 12515 Research Blvd., Building 3, Austin, TX 78759, has committed acts within this judicial district giving rise to this action, and Defendant continues to conduct business in this judicial district, including one or more acts of selling, using, importing and/or offering for sale infringing products or providing service and support to Defendant's customers in this District.

## IV.     THE PATENTS-IN-SUIT

13.     The Patents-in-Suit disclose systems and methods of audio-video conferencing collaboration.  The precise elements and limitations of each patent claim define the contours of the inventions, and any summary should not be understood a proxy for claim scope.

14.     At a very high level, the '525 Patent discloses converging a public switched telephone network ("PSTN") communication with audio-video communications over a data network.  Generally, the '332 Patent discloses converging a PSTN communication with audio-video communications, as well as collaboration data using a secure data network.  The '997 Patent discloses the provisioning of multiple secured network communications using multicast technology with at least one PSTN communication.  Finally, the '612 Patent discloses converging a PSTN communication with audio-video communications by dialing out to the establish PSTN

connection using a secure data network.

15.     Meetrix has obtained all substantial right and interest to the Patents-in-Suit, including the right to recover for all past and future infringements thereof.

## V.     DEFENDANT'S ACTS

16.     Defendant manufactures, provides, sells, offers for sale, and/or distributes infringing devices, including video conferencing software (a/k/a software-as-a-service ("SAAS")). Such devices include, but are not limited to Cisco's WebEx Meeting and all other substantially similar products and services.

17.     Based on information and belief, Defendant's infringing products (including WebEx Meeting) provide a means to conduct a multi-participant audio/video conference call over the Internet.  WebEx Meeting facilitates online meetings, allowing its users to connect via a phone or computer to share collaboration data over a secured private connection over the Internet.

18.     For example, with regard to claim 1 of '332 Patent, '525 Patent, and '612 Patent WebEx Meeting allows a participant (*e.g.* phone participant) to participate and connect to an online meeting over a PSTN connection (*e.g.* "land line," cell phone, *etc.*).  Such a participant can then talk with a second participant (*e.g.* moderator or host) who may be connected using a different form of audio (and/or video) communication, such as VoIP or web conferencing communications. A third participant (*e.g.* remote user) connects to the conference over a private secure data network connection for audio/video communications and to share collaboration data (*e.g.* electronic presentation, electronic documents, *etc.*) with the other participants.  WebEx Meeting mixes the different forms of communication such that the remote user can communicate with the phone participant (using a PSTN), as well as the moderator communicating over a secure data network connection.  Likewise, the system enables the phone participant to hear both the moderator and

the remote audio communications by mixing the different audio signals.  In this regard, WebEx Meeting infringes at least claim 1 of each of the '332 Patent and '525 Patent.

19.     Specifically, with regard to claim 1 of the '332 Patent, performance of all the steps are performed or attributable to Defendant, directly.  For example, as taught by claim 1 of the '332 Patent, WebEx Meetings a) receives audio data from a PSTN network (*e.g.* when a participant dials in via phone), b) receives audio data from a moderator (*e.g.* VoIP call), c) receives audio, video and collaboration data from a remote client (*e.g.* web camera and screen sharing) via a VPN tunnel (as explained below), d) mixes the first two audio data, e) transmits that mix to the remote user, f) mixes the audio data from a moderator with that from the remote client, and g) transmits that mix to the PSTN participant.  Defendant highlights the features of its infringing products:



**Source:** http://www.webex.com/includes/documents/Getting_Started_Guide_091114.pdf?T

SECOND AMENDED COMPLAINT

rackID=1029999&hbxref=https%3A%2F%2Fwww.google.com%2F&goid=quick_start_guide_US



**Source:** http://www.cisco.com/c/dam/en/us/products/collateral/unified-communications/unified-presence/webex_meeting_center_datasheet.pdf



**Source:** http://www.cisco.com/c/en/us/solutions/collateral/enterprise/cisco-on-

cisco/Cisco_IT_Case_Study-WebEx_Cloud_Connected_Architecture-0.pdf

20.     Moreover, because WebEx Meeting can initiate a dial-out process to establish a connection with a PSTN client, it further infringes claim 1 of the '612 Patent.

21.     Regarding claim 1 of the '997 Patent, WebEx Meeting allows several online participants to connect to a conference by sending a message (*e.g.* invitation) to a group of multicast appliances (*e.g.* remote computers).   Each participant is connected to the online conference using a private secure connection.   The system facilitates a telephonic participant who dials-in, provides a conference ID and is then authenticated.   Once authenticated, the telephonic participant is able to communicate with the other online participants who are connected over a data network.   In this regard, WebEx Meeting infringes at least claim 1 of the '997 Patent.

22.     WebEx Meeting employs various types of security, thereby achieving a "highly secure" meeting experience, as set forth below:

---

**Overview of the Highly Secure WebEx Meeting Experience**

The WebEx meeting experience encompasses:

- Meeting-site configuration
- Security options for scheduling
- Options for starting and joining a WebEx meeting
- Encryption technologies
- Transport-layer security
- Firewall compatibility
- Meeting data privacy
- In-meeting security
- Single sign-on
- Third-party accreditations (independent audits validate Cisco WebEx security)

---

**Source:** http://www.webex.com/includes/documents/security_webex.pdf

SECOND AMENDED COMPLAINT

## How secure are Webex products?

Security is a big concern for every company, and stringent security is one of the great strengths of all Webex products. That's important when you're representing yourself and your business to others, and sharing valuable content online. All of your Webex meetings, events, training, and remote support products are protected by a highly reliable and secure network.

The Cisco Webex Cloud is a global, enterprise-scale network designed specifically for highly secure delivery of on-demand applications. It offers a scalable architecture, consistent availability, and multilayer tenant security validated by rigorous independent audits, including SSAE-16 and ISO 27001.

The Cisco Webex Cloud is certified by the Skyhigh CloudTrustTM Program, the most extensive, impartial evaluation of cloud security and enterprise-readiness available.

**Source:** https://www.webex.com/faqs.html



Cisco WebEx clients use H.264 SSL VPN Client (SVC) technology to communicate with both participants in the WebEx Cloud and participants on WebEx mobile and desktop clients. Where necessary, the system will send and receive one or more SVC layers to permit the best possible viewing experience for all users, regardless of individually available bandwidth. Highly connected participants may be asked to send lower SVC profiles if WebEx clients connected at lower speeds request it.

**Source:** http://www.cisco.com/c/en/us/products/collateral/conferencing/webex-meeting-center/white-paper-c11-735650.pdf

| Benefit | Feature |
|---|---|
| **Meet stringent security requirements** | • Installed behind corporate firewall |
| | • End-user sessions encrypted with industry standard SSL 3.0, TLS 1.0, and TLS 1.2 |
| | • Communications between Cisco WebEx Meetings Server virtual servers are encrypted |
| | • FIPS-140-2 certified encryption can be turned on with a single policy setting, providing U.S. Department of Defense-level security |
| | • Meets US Department of Defense Joint Interoperability Test Command (JITC) Certification requirements |

**Source:** http://www.cisco.com/c/en/us/products/collateral/conferencing/webex-meetings-server/data_sheet_c78-717754.pdf

23. Finally, based on information and belief, Defendant infringes upon the asserted method claims at least by developing and testing WebEx Meetings, constituting direct infringement.

<u>Joint Infringement</u>

24. Alternatively, Defendant directs and/or controls its customers/users' performance of the steps of the asserted method claims. Defendant requires its customers/users to enter into agreements concerning the operation and use of infringing product and provisions software to effectuate the asserted methods. Based on information and belief, each of Defendant's customers/users is required to agree to Defendant's terms of service for WebEx Meeting.

25. Defendant prescribes instructions to direct and/or control its customer/users' performance of its software in an infringing manner. (*e.g.* https://www.cisco.com/c/en/us/support/conferencing/webex-meetings-server/products-installation-guides-list.html and https://www.cisco.com/c/en/us/products/security/implementation-services.html). Through the Defendant provisioning of WebEx Meeting software, as well as its contractual relationships with customers/users, Defendant directs and controls acts of infringement.

26. Defendant conditions participation in an activity or receipt of a benefit of its performance of a step or steps and establishes the manner or timing of that performance. To the extent that some steps of a claim are performed by a different party than Defendant (e.g. Defendant's users), Defendant—through its software—participates in the infringement and both Defendant and its users receive a benefit upon performance of the steps. For example, Defendant provides the software and systems that establish the manner and/or timing of the performance of the steps such as allowing for Defendant's customer/users to connect and communicate via PSTN

or data communications, allowing for collaboration and screen sharing among its customers, providing secure connectivity, *etc.*  Defendant's contracts with a user also creates an agency relationship and/or governs infringing activity for the purposes of joint infringement.

27.   Defendant's customer/users are encouraged to obtain certain benefits by using WebEx Meeting (*e.g.* "Our online meeting products give you an incredible array of features. They're all standard with any paid subscription, including video conferencing with full screen, multiple feed, or side-by-side with screen sharing viewing modes.").  And Cisco prescribes instructions to its customers/users to perform certain steps.  For example, regarding steps 1.a., 1.b and 1c of claim 1 of the '332 Patent, Defendant provides instructions on how to "Do more with conference. Conference calls with Webex Meetings give you more options. You can go audio only, or use video, too." (*e.g* https://www.webex.com/features/conference-call.html).  Defendant's infringing product then establishes the manner of the performance of the method, to wit: performing a multi-participant audio/video conference call over the Internet.

<u>Defendant's Knowledge of the Patents-in-Suit</u>

28.   Based on information and belief, Cisco has had knowledge of its infringement of the Patents-in-Suit at least as early as when Cisco received actual and/or constructive notice of the Patents-in-Suit in connection with its patent-holding subsidiary's—Cisco Technology, Inc.'s ("Cisco Technology")—prosecution activities before the United States Patent & Trademark Office. On information and belief, Cisco Technology operates in close cooperation with Cisco as a subsidiary of Cisco for the purposes of managing Cisco's intellectual property portfolio, including Cisco's patents. Evidence of this close relationship and the sharing of knowledge between the parent and subsidiary can be found in the fact that Cisco Technology shares a common address with Cisco at 2730 Gateway Oaks Drive, Sacramento California 95833. Additional

discovery on this topic is expected to yield evidence that Cisco Technology routinely shares the details of its prosecution activities with Cisco.

29.     On information and belief, Cisco, via Cisco Technology, gained actual and/or constructive knowledge of the Patents-in-Suit at least in connection with the patent applications that resulted in Cisco's own U.S. Patent Nos. 8,037,303; 8,582,468; 8,667,095; 8,953,486; and 9,357,164. The parent application of all the Patents-in-Suit (App. No. 2004/0223464) or its resulting patent (U.S. Pat. No. 7,664,056), which is and was a Meetrix application and patent, was cited both by the examiner during the prosecution of each of Cisco U.S. Patent Nos. 8,037,303; 8,582,468; 8,667,095; 8,953,486; and 9,357,164 and listed on the face of each resulting patent itself in the "References Cited" section. The earliest date on which Meetrix's 2004/0223464 application was cited during the prosecution of a Cisco patent was on June 25, 2009 in a "Notice of References Cited" filed by the examiner during the prosecution of Defendant's U.S. Patent No. 8,037,303 and the earliest date of issuance amongst the Patents-in-Suit is December 25, 2012. Accordingly, Cisco has had respective knowledge of each of the Patents-in-Suit at least as early as the respective dates of issuance or dates of publication of each of the Patents-in-Suit which are children of the 2004/0223464 application and 7,664,056 patent that Cisco was notified of by the United States Patent and Trademark Office. The '997 Patent issued on December 25, 2012; the '525 Patent issued on July 28, 2015; the '332 Patent issued on February, 22016; and the '612 Patent issued on December 12, 2017.

30.     Additionally, Cisco has had knowledge of the Patents-in-Suit at least as early as the service of the Original Complaint (Dkt. 1) on April 20, 2018 that asserted each of the Patents-in-

Suit and explained Cisco's infringement of the same.

### Defendant's Indirect Infringement

31.     With knowledge of the Patents-in-Suit, Defendant intentionally provides services and instructions for the installation and infringing operation of infringing products (including, by way of example, the resources and materials available at https://www.cisco.com/c/en/us/support/conferencing/webex-meetings-server/products-installation-guides-list.html and https://www.cisco.com/c/en/us/products/security/implementation-services.html) to the customers of its products, who directly infringe through the operation of those products.

Defendant Cisco controls the manner in which users (including initiators and participants) of its WebEx Meeting service use and derive benefit from WebEx Meeting.  More specifically, Cisco controls the manner in which its customers initiate, join and participate in web conferences, and their behavior in these particulars should properly be attributed to Cisco.

32.     Defendant markets, supports, and provides technical assistance for the use of

WebEx Meeting to its customs/users:

> ## Why are Webex products my best choice for online collaboration?
>
> Our online meeting products give you an incredible array of features. They're all standard with any paid subscription, including video conferencing with full screen, multiple feed, or side-by-side with screen sharing viewing modes. You can switch presenters, share what's on your desktop or an application, annotate documents together, sketch ideas on a virtual whiteboard, record meetings, and organize or join meetings from your smartphone or tablet. And those are just the highlights of online meeting features.
>
> We also have best-in-class Webex solutions for events, webinars, training, and remote support. Instead of learning multiple products from different vendors, you can work with one vendor for all of your collaboration needs.
>
> Webex collaboration products are easy to use. We help you conference, collaborate, and present online more productively, without technology hassles getting in the way.

**Source:** https://www.webex.com/faqs.html

> ## What is Collaboration Meeting Rooms (CMR) Cloud on my Cisco Webex Meetings plan?
>
> The CMR Cloud service dramatically simplifies setting up and joining video conferencing meetings. It also makes compatibility concerns (can my device talk to your device?) a non-issue.
>
> - You get personal video conferencing rooms. Each room has an identifier (called a URI) that's as unique as your phone number. Meeting instantly or scheduling a meeting is as easy as giving out your personal ID (no tedious setup time). Your room is always available for meetings, but you can also lock your room (when you don't want to be disturbed, or you're already in a meeting).
> - You can use whatever systems and devices you have today–no special equipment required. Behind the scenes in the cloud, we handle compatibility between standard video systems (using a technology called bridging). No one has to think about where they're located or what device they're using to join a meeting.

**Source:** https://www.webex.com/faqs.html#faqs-meetings

> ### Can Cisco Webex Meetings integrate with my other IT investments?
>
> Being committed to your collaboration success means knocking down barriers to connecting. Webex Meetings is designed to integrate with the rest of your IT systems, including:
>
> - Working with the rest of the Cisco collaboration portfolio, including Cisco TelePresence and Cisco Jabber.
> - Working with third-party systems, including audio solutions, Microsoft Office applications, and any Cisco Webex-enabled mobile or desktop web client.
> - Working with any standard-based video device or system, by activating CMR Cloud.
> - Using APIs to integrate Webex with other web-based apps and workflows.

**Source:** https://www.webex.com/faqs.html

33.     Defendant provides (and encourages) its customers/users to specifically use WebEx Meeting in a manner that infringes the asserted claims.  This includes, but is not limited to the following examples:

> "Join from any device. Host or join a meeting from any device: mobile, tablet, laptop, or video device with one consistent experience." https://www.webex.com/products/meetings/index.html

> "Present anything. Share your whole screen or just one document or application. Even natively screen share from your mobile device." https://www.webex.com/products/meetings/index.html

> "Cisco Webex Calling is your phone system in the cloud, with all the benefits of a traditional office phone system, without the complexity of managing it." https://www.webex.com/products/calling/index.html

> "Every paid Webex account comes with 24x7 technical support, including Webex Meetings Premium plans, Webex Events, Webex Training, and Webex Support." https://www.webex.com/faqs.html#faqs-meetings

34.     Through its actions, Defendant has infringed the Patents-in-Suit and actively promoted others to infringe the Patents-in-Suit throughout the United States, including by customers within the Western District of Texas.  On information and belief, Defendant induces its customers to infringe by instructing or specifying that its customers operate WebEx Meeting and

other similar infringing products and services, in a manner as described above. On information and belief, Defendant had actual knowledge or was willfully blind to the Patents-in-Suit starting as early as the issue date of each of the Patents-in-Suit. Alternatively, Defendant knew that its customers/users acts constituted infringement at least as early as the date the Plaintiff's Original Complaint.

35.     Defendant, with knowledge of the Patents-in-Suit, contributes to the infringement of the Patents-in-Suit, by having its direct and indirect customers sell, offer for sale, use, or import WebEx Meeting, as well as all other substantially similar products, with knowledge that such products infringe the Patents-in-Suit.

36.     According to Defendant, "With Cisco Webex Meetings, we're making it easier than ever for everyone to be seen, be heard, and work together effectively, even when they are miles apart. Anyone can join a meeting from inside or outside the organization, using mobile, desktop, video room devices (even a third-party device), or their browser." WebEx Meeting captures the heart of the patented technology at issue—systems and methods of audio-video conferencing collaboration.

37.     On information and belief, WebEx Meeting is especially made or adapted for infringing the Patents-in-Suit, and has no substantially non-infringing uses.  For example, WebEx Meeting provides the functionality to specifically allow a participant to connect to an online conference using a PSTN and communicate with other participants with data connections over a secured connection—functionality which is material to practicing the Patents-in-Suit.  Based on information and belief, this functionality has no substantially non-infringing uses.  Indeed, the primary purpose of WebEx Meeting is for online collaboration over the Internet and is not intended

for other purposes.

38.      Meetrix has been and will continue to suffer damages as a result of Defendant's infringing acts.

## COUNT ONE
### PATENT INFRINGEMENT—U.S. PATENT NO.  9,253,332

39.      Plaintiff Meetrix realleges and incorporates herein paragraphs 1–38.

40.      Defendant, without authorization or license from Meetrix, has been and is presently directly infringing at least claim 1 of the '332 Patent, as infringement is defined by 35 U.S.C. § 271(a), including through making, using (including for testing purposes), selling and offering for sale methods and articles infringing one or more claims of the '332 Patent.  Defendant is thus liable for direct infringement of the '332 Patent pursuant to 35 U.S.C. § 271(a).  Exemplary infringing products include WebEx Meeting.

41.      On information and belief, at least since its receipt of actual and constructive notice and/or the filing of the Original Complaint, Defendant, without authorization or license from Meetrix, has been and is presently indirectly infringing at least claim 1 of the '332 Patent, including actively inducing infringement of the '352 Patent under 35 U.S.C. § 271(b).  Such inducements include without limitation, with specific intent to encourage the infringement, knowingly inducing consumers to use infringing articles and methods that Defendant knows or should know infringe one or more claims of the '332 Patent.  Defendant instructs its customers to make and use the patented inventions of the '332 Patent by operating its products in accordance with its instructions and specifications.  Defendant specifically intends its customers to infringe by implementing its conference systems to provide converging a PSTN communication with audio-video

communications, as well as collaboration data using a secure data network, as set forth above.

42.     Upon information and belief, Defendant has jointly infringed the '332 Patent, including by controlling and/or directing others to perform one or more of the claimed method steps.  More specifically, as alleged above, all steps of the claimed method are performed and: (1) Cisco exercises the requisite direction or control over its initiators' and participants' performance; and (2) the initiators and participants in Cisco's conferences form a joint enterprise such that performance of every step is attributable to Cisco.

43.     On information and belief, at least since its receipt of notice and/or the filing of the Original Complaint, Defendant, without authorization or license from Meetrix, has been and is presently indirectly infringing at least claim 1 of the '332 Patent, including contributorily infringing the '332 Patent under 35 U.S.C. § 271(c).  Contributory infringement includes without limitation, Defendant's offer to sell a component of a product or apparatus for use in a process, that is material to practicing the invention, has no substantial non-infringing uses, and by which Defendant is aware or knows to be especially made or especially adapted for use in infringement. Defendant instructs its customers to make and use the patented inventions of the '332 Patent by operating its products in accordance with its instructions and specifications. Defendant specifically intends its customers to infringe by implementing its conference systems to provide converging a PSTN communication with audio-video communications, as well as collaboration data using a secure data network, as set forth above.

44.     Defendant's aforementioned acts have caused damage to Meetrix and will continue to do so.

## COUNT TWO
## PATENT INFRINGEMENT—U.S. PATENT NO.  9,094,525

45.     Plaintiff Meetrix realleges and incorporates herein paragraphs 1–44.

46.     Defendant, without authorization or license from Meetrix, has been and is presently directly infringing at least claim 1 of the '525 Patent, as infringement is defined by 35 U.S.C. § 271(a), including through making, using (including for testing purposes), selling and offering for sale methods and articles infringing one or more claims of the '525 Patent.  Defendant is thus liable for direct infringement of the '525 Patent pursuant to 35 U.S.C. § 271(a).  Exemplary infringing products include WebEx Meeting.

47.     On information and belief, at least since its receipt of notice and/or the filing of the Original Complaint, Defendant, without authorization or license from Meetrix, has been and is presently indirectly infringing at least claim 1 of the '525 Patent, including actively inducing infringement of the '352 Patent under 35 U.S.C. § 271(b).  Such inducements include without limitation, with specific intent to encourage the infringement, knowingly inducing consumers to use infringing articles and methods that Defendant knows or should know infringe one or more claims of the '525 Patent.  Defendant instructs its customers to make and use the patented inventions of the '525 Patent by operating its products in accordance with its instructions and specifications.  Defendant specifically intends its customers to infringe by implementing its conference systems to provide a converged public switched telephone network and audio-video communications over a data network, as set forth above.

48.     Upon information and belief, Defendant has jointly infringed the '525 Patent, including by controlling and/or directing others to perform one or more of the claimed method steps.  More specifically, as alleged above, all steps of the claimed method are performed and: (1)

Cisco exercises the requisite direction or control over its initiators' and participants' performance; and (2) the initiators and participants in Cisco's conferences form a joint enterprise such that performance of every step is attributable to Cisco.

49.     On information and belief, at least since its receipt of notice and/or the filing of the Original Complaint, Defendant, without authorization or license from Meetrix, has been and is presently indirectly infringing at least claim 1 of the '525 Patent, including contributorily infringing the '525 Patent under 35 U.S.C. § 271(c).  Contributory infringement includes without limitation, Defendant's offer to sell a component of a product or apparatus for use in a process, that is material to practicing the invention, has no substantial non-infringing uses, and which Defendant is aware or knows to be especially made or especially adapted for use in infringement. Defendant instructs its customers to make and use the patented inventions of the '525 Patent operating its products in accordance with its instructions and specifications. Defendant specifically intends its customers to infringe by implementing its conference systems to provide converging a PSTN communication with audio-video communications, as well as collaboration data using a secure data network, as set forth above.

50.     Defendant's aforementioned acts have caused damage to Meetrix and will continue to do so.

**COUNT THREE**
**PATENT INFRINGEMENT—U.S. PATENT NO.  8,339,997**

51.     Plaintiff Meetrix realleges and incorporates herein paragraphs 1–50.

52.     Defendant, without authorization or license from Meetrix, has been and is presently directly infringing at least claim 1 of the '997 Patent, as infringement is defined by 35 U.S.C. § 271(a), including through making, using (including for testing purposes), selling and offering for

sale methods and articles infringing one or more claims of the '997 Patent.  Defendant is thus liable for direct infringement of the '997 Patent pursuant to 35 U.S.C. § 271(a).  Exemplary infringing products include WebEx Meeting.

53.     On information and belief, at least since its receipt of notice and/or the filing of the Original Complaint, Defendant, without authorization or license from Meetrix, has been and is presently indirectly infringing at least claim 1 of the '997 Patent, including actively inducing infringement of the '997 Patent under 35 U.S.C. § 271(b).  Such inducements include without limitation, with specific intent to encourage the infringement, knowingly inducing consumers to use infringing articles and methods that Defendant knows or should know infringe one or more claims of the '997 Patent.  Defendant instructs its customers to make and use the patented inventions of the '997 Patent by operating its products in accordance with its instructions and specifications.  Defendant specifically intends its customers to infringe by implementing its conference systems to provide provisioning of multiple secured network communications using multicast technology with at least one PSTN communication, as set forth above.

54.     Upon information and belief, Defendant has jointly infringed the '997 Patent, including by controlling and/or directing others to perform one or more of the claimed method steps.  More specifically, as alleged above, all steps of the claimed method are performed and: (1) Cisco exercises the requisite direction or control over its initiators' and participants' performance; and (2) the initiators and participants in Cisco's conferences form a joint enterprise such that performance of every step is attributable to Cisco.

55.     On information and belief, at least since its receipt of notice and/or the filing of the Original Complaint, Defendant, without authorization or license from Meetrix, has been and is presently indirectly infringing at least claim 1 of the '997 Patent, including contributorily

infringing the '997 Patent under 35 U.S.C. § 271(c).  Contributory infringement includes without limitation, Defendant's offer to sell, a component of a product or apparatus for use in a process, that is material to practicing the invention, has no substantial non-infringing uses, and which Defendant is aware or knows to be especially made or especially adapted for use in infringement. Defendant instructs its customers to make and use the patented inventions of the '997 Patent by operating its products in accordance with its instructions and specifications. Defendant specifically intends its customers to infringe by implementing its conference systems to provide provisioning of multiple secured network communications using multicast technology with at least one PSTN communication, as set forth above.

56.     Defendant's aforementioned acts have caused damage to Meetrix and will continue to do so.

## COUNT FOUR
### PATENT INFRINGEMENT—U.S. PATENT NO.  9,843,612

57.     Plaintiff Meetrix realleges and incorporates herein paragraphs 1–56.

58.     Defendant, without authorization or license from Meetrix, has been and is presently directly infringing at least claim 1 of the '612 Patent, as infringement is defined by 35 U.S.C. § 271(a), including through making, using (including for testing purposes), selling and offering for sale methods and articles infringing one or more claims of the '612 Patent.  Defendant is thus liable for direct infringement of the '612 Patent pursuant to 35 U.S.C. § 271(a).  Exemplary infringing products include WebEx Meeting.

59.     On information and belief, at least since its receipt of notice and/or the filing of the Original Complaint, Defendant, without authorization or license from Meetrix, has been and is presently indirectly infringing at least claim 1 of the '612 Patent, including actively inducing

infringement of the '612 Patent under 35 U.S.C. § 271(b).  Such inducements include without limitation, with specific intent to encourage the infringement, knowingly inducing consumers to use infringing articles and methods that Defendant knows or should know infringe one or more claims of the '612 Patent.  Defendant instructs its customers to make and use the patented inventions of the '612 Patent by operating its products in accordance with its instructions and specifications.  Defendant specifically intends its customers to infringe by implementing its conference systems to provide converged PSTN communications with audio-video communications by dialing out to establish the PSTN connection using a secure data network, as set forth above.

60.     Upon information and belief, Defendant has jointly infringed the '612 Patent, including by controlling and/or directing others to perform one or more of the claimed method steps.  More specifically, as alleged above, all steps of the claimed method are performed and: (1) Cisco exercises the requisite direction or control over its initiators' and participants' performance; and (2) the initiators and participants in Cisco's conferences form a joint enterprise such that performance of every step is attributable to Cisco.

61.     On information and belief, at least since its receipt of notice and/or the filing of the Original Complaint, Defendant, without authorization or license from Meetrix, has been and is presently indirectly infringing at least claim 1 of the '612 Patent, including contributorily infringing the '612 Patent under 35 U.S.C. § 271(c).  Contributory infringement includes without limitation, Defendant's offer to sell, a component of a product, or apparatus for use in a process, that is material to practicing the invention, has no substantial non-infringing uses, by which Defendant is aware or knows to be especially made or especially adapted for use in an infringement of such.  Defendant instructs its customers to make and use the patented inventions of the '612

Patent by operating its products in accordance with its instructions and specifications. Defendant specifically intends its customers to infringe by its conference systems to provide converged PSTN communications with audio-video communications by dialing out to establish the PSTN connection using a secure data network, as set forth above.

62.     Defendant's aforementioned acts have caused damage to Meetrix and will continue to do so.

## VI.     WILLFUL INFRINGEMENT

63.     Plaintiff alleges upon information and belief that, in connection with the knowledge it gained in connection with its own prosecution activities and upon receipt of Plaintiff's Original Complaint, Defendant and/or its closely-related affiliates have been made aware of the Patents-in-Suit, including in connection with the prosecution of its applications giving rise to U.S. Patent Nos. 8,037,303; 8,582,468; 8,667,095; 8,953,486; and 9,357,164.

64.     Notwithstanding this knowledge, Cisco has knowingly or with reckless disregard willfully infringed o6e or more of the Patents-in-Suit in a deliberate act of bad-faith. Cisco has thus had actual notice of infringement of one or more of the Patents-in-Suit and acted despite an objectively high likelihood that its actions constituted infringement of Plaintiff's valid patent rights.

65.     This objective risk was either known or so obvious that it should have been known to Defendant Cisco. Accordingly, Plaintiff seeks enhanced damages pursuant to 35 U.S.C. § 284.

## VII.     JURY DEMAND

66.     Plaintiff Meetrix hereby demands a jury on all issues so triable.

## VIII.    REQUEST FOR RELIEF

WHEREFORE, Plaintiff Meetrix respectfully requests that the Court:

A.    Enter judgment that Defendant infringes one or more claims of the Patents-in-Suit literally and/or under the doctrine of equivalents;

B.    Award Plaintiff Meetrix past and future damages together with prejudgment and post-judgment interest to compensate for the infringement by Defendant of Patents-in-Suit in accordance with 35 U.S.C. §284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. §284;

C.    Declare this case exceptional pursuant to 35 U.S.C. §285; and

D.    Award Plaintiff Meetrix its costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by this Court.

Dated:  July 19, 2018                    Respectfully submitted,

By:    */s/ Andrew G. DiNovo*
Andrew G.  DiNovo
Texas State Bar No. 00790594
adinovo@dinovoprice.com
Daniel L. Schmid
Texas State Bar No. 24093118
dschmid@dinovoprice.com
**DiNovo Price LLP**
7000 N. MoPac Expressway, Suite 350
Austin, Texas  78731
Telephone:  (512) 539-2626
Telecopier:  (512) 539-2627

John D. Saba, Jr.
Texas State Bar No. 24037415
john@wittliffcutter.com
W. Reid Wittliff
Texas State Bar No. 00791951
reid@wittliffcutter.com
Ryan A. Botkin
Texas State Bar No. 00793366
ryan@wittliffcutter.com
**WITTLIFF | CUTTER | AUSTIN, PLLC**
1803 West Ave.
Austin, Texas 78701
Telephone: (512) 960-4388
Facsimile:  (512) 960-4869

**ATTORNEYS FOR PLAINTIFF
MEETRIX IP, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on the   19th of July, 2018, all counsel of record who are deemed to have consented to electronic service are being served with a true and correct copy of  this document via the Court's CM/ECF system.

 /s/ *Andrew G. DiNovo*
Andrew G. DiNovo